Filed 4/26/16  P. v. Medina CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C074573 |
| Plaintiff and Respondent, | (Super. Ct. No. CM033310) |
| v. | |
| JUAN CARLOS MEDINA, | |
| Defendant and Appellant. | |

After a prior jury deadlocked and a mistrial was declared, a second jury acquitted defendant Juan Carlos Medina of first degree murder, convicted him of second degree murder, and found not true an allegation he used a knife during the commission of the murder.  (Pen. Code, §§ 187, 12022, subd. (b)(1).)[1]  The trial court sentenced defendant to 15 years to life in prison, and he timely filed this appeal.  On appeal, defendant

---

[1] Further undesignated statutory references are to the Penal Code.

1

contends the trial court erred in permitting the People to introduce evidence of a purported adoptive admission, and in failing to instruct on an aiding and abetting theory. Disagreeing, we shall affirm.

## BACKGROUND

An abbreviated statement of facts, largely agreed by the parties in their briefing, is all that is necessary for us to set forth given the two narrow issues raised on appeal.

In June 2006, about two weeks before the killing, defendant began a vehicle chase, chasing driver Kristin Garcia and her boyfriend and passenger Trenton Grey Stopplemore ("Trent," or the victim), who told Garcia he was terrified of defendant. Eventually, they stopped at a fire station, defendant and Trent got out and had a discussion, then defendant displayed a screwdriver and followed Trent out of Garcia's view.

On June 22, 2006, Trent called Garcia around 10:30 p.m., and told her he was picking up defendant and a man known as "Speedy" at a labor camp; then Trent made a three-way call in which Garcia heard Trent say he was going to get Speedy at the camp. At 10:44 p.m., a 911 call reported a stabbing.

That night Trent knocked on the door of a house near the camp, was bleeding, and said he felt like he was dying. He said he had been stabbed by "Mexicans" at the camp. He had been at least stabbed three times, once in the neck and twice in the back. He subsequently bled to death. A blood trail led 1,200 feet towards the camp parking lot.

Defendant lived about 200-300 yards from the camp parking lot. Six weeks after the killing his house was searched; officers found a paper with four names, including "Trent" after which was written "$100." The other names also had numbers after them. An experienced narcotics officer opined this paper was a narcotics "pay-owe" sheet.

About two to four weeks after the killing, Kellie Weil, Trent's former girlfriend, accused defendant of killing Trent. Defendant responded, "Yeah, I did it" mockingly, but proudly. On a later occasion, when Weil was again accusing him, defendant pulled a knife, which Weil interpreted as a threat. Weil had told an officer that defendant put a

2

knife in her face while in a car. At another location, defendant saw Weil and drew his hand across his neck, but Weil never told the police about this.

Frank Brewer testified that between May and September 2007, he was with defendant and other people at a drug house in Gridley when he heard a man named Garfield tell some third person that "[y]ou better have [defendant's] money; you saw what happened to Trent." Defendant immediately laughed.

The defense theory was that defendant was visiting his prematurely born child in a San Francisco hospital. The child had an emergency appointment on June 22, 2006 (the day of the killing), and had been readmitted three days later. Defendant would visit his child after work and spent a lot of time at the hospital during this period. This alibi was supported by testimony from the child's mother (Krista Gramps) and by defendant's mother (Clara Medina). This alibi was partly undermined by evidence of a 2011 recorded telephone conversation in which Gramps complained to defendant that he had *not* been with the family on June 22, 2006. At trial, Gramps claimed she had been mistaken about the date, and had been referencing defendant's absence from the hospital in April 2006.

Hospital records contain a notation dated June 25, 2006, stating: "The father of the baby is not involved."

The prosecutor argued that defendant personally fatally stabbed the victim. The prosecutor argued the forensic evidence showed intent, because: "The fact that Mr. Medina used a knife to sink it in through the victim's neck speaks volumes about what his goal is, what his intentions are, what his objectives are." The prosecutor consistently portrayed defendant as the actual killer. The defense argument was that defendant "had nothing to do with" the murder, pointing out no physical evidence (DNA, footprints, fingerprints, knife, etc.) tied him to it. The defense argued that the People's case rested on the testimony of Weil and Brewer, who were unreliable, inconsistent, and "under the influence" when they purported to see the things they testified about. The defense rested

3

on alibi, that defendant "was somewhere else when the crime was committed." The defense argued the victim's dying declaration was exculpatory, because the victim said "Mexicans" did this to him, but did not name defendant, whom he knew. In rebuttal, the prosecutor argued the victim may never have known who stabbed him, because he was stabbed from behind.

The jury acquitted defendant of first degree murder, convicted him of second degree murder, and found the knife-use enhancement not true.

## DISCUSSION

### I

### *Adoptive Admission*

Defendant contends the trial court erred under state and federal law by admitting Brewer's testimony that defendant laughed when someone suggested he had killed the victim over a debt. We find the trial court acted within its discretion in submitting to the jury the question whether defendant made an adoptive admission.

A. *Brewer's Testimony at the Hearing and Trial*

The People moved to admit the alleged adoptive admission by defendant, and the trial court held a hearing outside the presence of the jury. (See Evid. Code, § 402.) Brewer testified that in November 2009, he spoke with Detective Martin and told him that Garfield "was saying he better have [defendant's] money . . . [or] you seen what happened to Trent." Defendant was there, and "just laughed." This discussion took place in the summer of 2007. It was outside a house, inside the garage with the door open. Brewer was intoxicated on methamphetamines at the time he observed this incident. The trial court allowed the evidence to go to the jury.

At trial, Brewer testified that he began using methamphetamine at about 15 years old and was using it in 2007. He had several convictions or juvenile adjudications involving violence and moral turpitude. In the summer of 2007, at a "known dope house" in the Gridley area, he, defendant and Garfield were present, plus other people

Brewer could not remember. Brewer was under the influence of methamphetamine at that time. At one point "Garfield said: You better have [defendant's] money; you seen what happened to Trent. [¶] [Defendant] just laughed." Brewer did not immediately report this exchange because he was a gang member and could be hurt or killed for talking to the police. In November 2009, he was in custody, facing serious charges, and disclosed the exchange both because of his lingering belief in the wrongfulness of the crime and also in the hope it would help his case. However, he never received anything for his disclosure, although he conceded that as part of a plea bargain one charge was reduced to a misdemeanor for reasons unrelated to his testimony in defendant's case.[2] Brewer told a defense investigator he lied about the statement in the hope that he would not have to testify, but he testified he only said that because he feared retaliation.

B. *Analysis*

A trial court has broad discretion to make evidentiary rulings, which we review for an abuse of discretion. (See *People v. Benavides* (2005) 35 Cal.4th 69, 90.) In exercising its discretion, the trial court was required to consider the law applicable to the issue at hand. (See *County of Yolo v. Garcia* (1993) 20 Cal.App.4th 1771, 1778.)

Evidence Code section 1221 provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth." Prior cases interpreting this evidentiary rule have held that a jury or trial court could find a defendant adopted an inculpatory statement against him by laughing in response thereto (*People v. Browning* (1975) 45 Cal.App.3d 125, 143-144, overruled on other grounds by *People v. Williams* (1976) 16 Cal.3d 663, 669) or even by smiling at an accusation (*People v. Silva* (1988) 45 Cal.3d 604, 623-625).

---

[2] The transcript of a recording of Brewer's interview with Detective Martin is broadly consistent with Brewer's trial testimony about defendant's statement.

5

Based on these precedents, the trial court acted within its discretion by admitting the evidence and instructing the jury that it *may* find, if it believed Brewer, that defendant's laughter was an admission.[3]

The fact the accusation was not explicit goes to the weight of the evidence. And although, as counsel asserts, defendant's laugh may have been no more than a reflection of his belief that the accusation was absurd, that was a matter for the jury to resolve, under the evidence and the instruction.

Accordingly, we find no state-law evidentiary error in this case. Further, "when evidence is properly admitted under the Evidence Code, there is no violation of due process." (*People v. Johnson* (2015) 61 Cal.4th 734, 763 [dying declaration case].)[4]

_____

[3] Over defendant's objection based on lack of sufficient evidentiary support, the trial court read the jury the pattern instruction on adoptive admissions, as follows: "If you conclude that someone made a statement outside of court that accused the defendant of the crime or tended to connect the defendant with the commission of the crime and the defendant did not deny it, you must decide whether each of the following is true: [¶] One, the statement was made to the defendant or made in his presence; [¶] Two, the defendant heard and understood the statement; [¶] Three, the defendant would, under all the circumstances, naturally have denied the statement if he thought it was not true; [¶] And four, the defendant could have denied it but did not. [¶] If you decide that all of these requirements have been met, you may conclude that the defendant admitted the statement was true. [¶] If you decide that any of these requirements has not been met, you must not consider either the statement or the defendant's response for any purpose." (CALCRIM No. 357.)

[4] We observe that the fact the jury was not compelled to draw any inference from this evidence was emphasized in argument. The prosecutor read the adoptive admission instruction and described the testimony by Brewer. He invited the jury to conclude this laugh was an admission of guilt. The defense hit Brewer's credibility hard, based on the fact he was long-time drug user, high on methamphetamine at the time he claimed to have heard this exchange, and the fact that he waited over two years, after he was arrested on other charges, to tell his story. Further, Brewer admitted he had previously lied to the police about an earlier matter, and had several felony convictions evidencing untruthfulness. Thus, the jury had ample opportunity to evaluate whether Brewer was

6

## II

### *Aiding and Abetting Theory*

Defendant contends the trial court erred by not instructing on aiding and abetting. We find no error, because there was no evidence of aider liability.

Defendant concedes neither party sought aiding instructions, but contends the issue is not forfeited and faults the prosecutor because "instruction on the aiding and abetting theory could only increase the chance of a guilty verdict."

Absent substantial evidence to support an aiding theory, there was no basis to instruct thereon. (See *People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1046, 1054-1055, 1058-1059.) Here, as the People point out, defendant's claim of evidence that might support aider liability rests on his undeveloped assertion about the victim's dying declaration that "Mexicans" (plural) stabbed him. Defendant argues that the victim knew defendant well and yet did not name him when asked by whom the victim was stabbed, concluding: "This dying declaration provides substantial evidence that appellant was only an aider and abettor."

But as the People point out, there was no evidence defendant was present while someone else, or some others, inflicted the fatal stab wounds, nor was there any evidence that defendant was absent, yet somehow contributed to the killing. Although defendant argues that the victim's use of the plural "Mexicans" "certainly indicates that more than one person was involved," this conclusion is far from certain. The victim had been mortally wounded and apparently dragged himself to a nearby house. Whether he could understand the question put to him and answer with the precision appellate counsel assumes is questionable. Even if the victim thought more than one Mexican had killed him, this aider theory hinges on speculation that defendant acted solely as part of a group,

---

telling the truth, correctly perceived and recalled what happened, and whether defendant's laugh was, in fact, an admission.

disregarding trial evidence about the manner of the killing and the absence of a group. Thus, there was no basis to instruct on aider liability.[5]

Defendant also argues that "[t]he jury verdict convicting appellant of second degree murder but finding the weapon use enhancement not true establishes that the [jury] found appellant guilty as an aider and abettor." We disagree.

First, the not-true finding as to the enhancement does not speak to the jury's reasoning about murder. The finding might have been no more than the product of compromise or lenity. (See § 954; *People v. Lewis* (2001) 25 Cal.4th 610, 655-656; *People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656-1657; 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Judgment, § 85, pp. 128-129.)

Second, as the prosecutor argued during post-trial motions, no knife was linked to the crime, and many objects can stab, therefore the jury could rationally have concluded the People did not carry their burden to show that defendant used a *knife*, as alleged. Indeed, the prosecutor referenced evidence about defendant's prior use of a screwdriver-- which had been after the vehicle chase a couple of weeks before the killing--in argument. The jury could rationally have had a doubt about what kind of implement defendant used to kill Trent.

---

[5] In a posttrial motion, the defense suggested the People introduced an "ambush theory" which supported aider liability. But the reference to ambush was to show premeditation: "Throughout human history, ambushes have been used as a form of violence against one another. In order to effectively accomplish any ambush, the key to successfully executing any ambush is planning. You have to think [ahead.]" The prosecutor did not argue *multiple people* participated in such an ambush. The defense theory was alibi; he presented no evidence or argument that he was present but either was not a participant or did not share the mental state of the perpetrator(s), or that he was an absent co-participant, although in his new trial motion he raised the possibility of non-present aider liability. If an alternate aiding theory had been argued by trial counsel, it would have undermined the credibility of the alibi defense. This provides a rational tactical reason for not pursuing an aiding theory, negating appellate counsel's claim of ineffective assistance of trial counsel.

There was no error in failing to instruct on aiding and abetting.

## DISPOSITION

The judgment is affirmed.

/s/
_____
Duarte, J.

We concur:

/s/
_____
Murray, Acting P. J.

/s/
_____
Renner, J.